IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

MICHAEL WATTS,

          Plaintiff,

    v.                              Civil Action No.
                                     9:07-CV-00773 (DNH/DEP)

U.S. FEDERAL BUREAU OF PRISONS,
*et al.,*

          Defendants.

_____

APPEARANCES:                  OF COUNSEL:

FOR PLAINTIFF:

MICHAEL WATTS, *Pro Se*
13208-014
FCI Fort Dix
5756 Hartford & Pointville Rd.
Fort Dix, NJ 08640

FOR DEFENDANTS:

HON. ANDREW BAXTER          WILLIAM H. PEASE, ESQ.
Acting United States Attorney    Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, New York 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

Plaintiff Michael Watts, a federal prison inmate who is proceeding *pro se* and *in forma pauperis*, has commenced this action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b) and 28 U.S.C. §§ 2671-2680, as well as under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999 (1971), complaining of medical treatment provided by prison officials for a finger condition during the time of his confinement.  In his complaint, plaintiff contends that through their negligence and deliberate indifference defendants wrongfully delayed in providing him with appropriate treatment for his condition, diagnosed as a Boutonniere deformity, resulting in a two year hiatus between the time of his injury and corrective surgery.  Watts maintains that as a result of defendants' indifference he has suffered permanent loss of function and disfigurement in his finger, and seeks recovery of compensatory damages in the sum of $250,000.

In response to Watts' complaint the defendants, who have yet to answer, have moved seeking its dismissal or, in the alternative, the entry of summary judgment in their favor, arguing that plaintiff's FTCA and *Bivens* claims are both untimely and substantively deficient, additionally

2

asserting their entitlement to qualified immunity and plaintiff's inability to recover damages from them as a result of the actions of an independent medical contractor.  Having carefully considered the record now before the court, including Watts' opposition to defendants' motion, I recommend the entry of summary judgment dismissing plaintiff's complaint in its entirety.

I.    BACKGROUND[1]

The material facts surrounding plaintiff's claims are neither overly complex nor particularly controversial.  Plaintiff is a federal prison inmate entrusted to the custody of the United States Bureau of Prisons ("BOP"); at the times relevant to his claims, plaintiff was confined within the Ray Brook Federal Correctional Institution ("FCI Ray Brook"), a medium security prison facility located in Ray Brook, New York, and within the boundaries of the Northern District of New York.  Complaint (Dkt. No. 1) ¶ 1; Marini Decl. (Dkt. No. 18-5) ¶ 3.

---

[1]    In light of my decision to treat defendants' motion as seeking the entry of summary judgment,  the following recitation is drawn from the full record now before the court, with all inferences drawn, and ambiguities resolved, in favor of the plaintiff. *See Wells-Williams v. Kingsboro Psychiatric Ctr.*, No. 03-CV-134, 2007 WL 1011545, at *2 (E.D.N.Y. Mar. 30, 2007) (citations omitted).

On January 31, 2004, plaintiff injured the little finger of his right hand while engaged in an authorized recreational activity at FCI Ray Brook. Complaint (Dkt. No. 1) Count I, ¶ 4.  Three days later, Watts sought medical intervention for his injury, complaining of "continued swelling, progressive pain and sensitivity to touch about the finger."  *Id.*, Count I, ¶ 5.  In light of his request, plaintiff was placed on "call-out," and was examined on February 18, 2004, approximately two weeks later, by Physician's Assistant ("PA") Bradley R. Cink, who noted the existence of pain and swelling and an unrelated Boutonniere Deformity in plaintiff's right fourth finger.  *Id.*, Count I, ¶¶ 6-7; Plaintiff's Medical Records at p. 25.[2]  While in his notes of that examination PA Cink appears to have documented his recommendation that an x-ray be taken of plaintiff's finger and noted "? surgery, in future," plaintiff maintains that during that session he was advised by PA Cink that "[t]here is nothing I can do for you.  You should be fine-put ice on it."  Plaintiff's Medical Records at p. 25; Complaint (Dkt. No. 1), Count I, ¶ 7.

In his complaint plaintiff asserts that Dr. Dawn Marini, the Clinical

---

[2]     Excerpts from plaintiff prison medical records covering the relevant period are included with defendants' motion papers.  *See* Marini Decl. (Dkt. No. 18-5) Exh. A.

Director of the Health Services Unit at FCI Ray Brook, at some point thereafter reviewed the results of a radiographic examination of plaintiff's right hand conducted on or about March 15, 2004.  Complaint (Dkt. No. 1), Count I, ¶ 8.   Based upon her review, Dr. Marini is alleged to have noted her impression of "[n]o acute fracture", though plaintiff claims that he was not advised of those results, nor was any follow-up appointment scheduled.[3]  *Id.*

Plaintiff was again seen by PA Cink on June 2, 2004, complaining of swelling and pain in his injured finger.  Complaint (Dkt. No. 1), Count I, ¶ 9; Marini Decl. (Dkt. No. 18-5) Exh. A at p. 26.  As a result of his examination on that date PA Cink noted a Boutonniere deformity in plaintiff's little finger, and advised Watts that his request for an orthopedic evaluation would be considered.  *Id.*

Despite the fact that he continued to experience pain and swelling, plaintiff's finger was not examined again until February 3, 2005 when he was seen by Dr. G. Mina, an orthopedic consultant.[4]  Plaintiff's Medical

_____

[3]     Neither plaintiff's medical records nor Dr. Marini's declaration document this event.

[4]     Plaintiff was seen once during that intervening period by P.A. Cink. Plaintiff's Medical Records at p. 26.  It is unclear from a recorded note of that examination, which occurred on September 23, 2004, as to what prompted Watts to seek medical attention on that occasion.

5

Records at pp. 26, 118; Complaint (Dkt. No. 1), Count I, ¶¶ 10-12.  Based

upon the results of that outside evaluation, Dr. Marini requested a

consultation with a hand surgeon; that request was approved on February

7, 2005, and plaintiff was placed on a waiting list for what was

characterized as "routine care."[5]  Complaint (Dkt. No. 1), Count I, ¶ 13.

Plaintiff was ultimately seen by Dr. Adam B. Shafritz, a hand

surgeon, on October 3, 2005.  Plaintiff's Medical Records at pp. 115-17.

Based upon his examination Dr. Shafritz recommended that plaintiff

undergo an arthrodesis procedure to help correct his finger condition,

discussing the procedure with plaintiff and informing him that the surgery

could be performed at his convenience, including following his release

from prison, since the "surgical treatment for [plaintiff's condition] will not

change regardless of the amount of time that has passed."[6]  *Id.*   After

_____

[5]     In her declaration Dr. Marini notes that given various practical
considerations, including the large number of inmates at FCI Ray Brook and its
relatively remote location, she is limited in the number of outside medical trips which
can be scheduled for inmates on any particular date; accordingly, with an average of
approximately 200 inmates awaiting outside medical trips at any given point in time,
she must prioritize based upon the urgency of the medical needs involved.  Marini
Decl. (Dkt. No. 18-5) ¶¶ 3-10.  Plaintiff's Boutonniere deformity was classified as a
"routine medical need because [plaintiff's] vital organs were not compromised and any
corrective procedure for his finger would have been elective."  *Id.* at ¶ 10.

[6]     An arthrodesis is "the surgical fixation of a joint by a procedure designed
to accomplish fusion of the joint surfaces by promoting the proliferation of bone cells."
DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 159 (31st Ed., Saunders Elsevier, 2007).

being informed that Watts wished to undergo the recommended procedure, Dr. Marini noted in an entry dated October 3, 2005 that she would "schedule [plaintiff] for elective surgical repair since this defect does impair function of [the right] hand."[7]  *Id.* at p. 26.

Plaintiff underwent the recommended arthrodesis procedure at the Fletcher Allen Health Care Center, located in Burlington, Vermont, on January 26, 2006.  Plaintiff's Medical Records at pp. 127-28. Unfortunately, apparently as a result of the use of an overheated medical instrument, during the course of the operation plaintiff suffered second degree burns accompanied by permanent skin discoloration.  *Id.*; *see also* Complaint (Dkt. No. 1), Count 1, ¶ 15.  In a report of the surgery it was noted that "prior to the osteotomy, the articular cartilage anatomy was extraordinarily diseased and any sort of corrective soft tissue procedure would have likely failed."  Plaintiff's Medical Records at p. 127.

II.    PROCEDURAL HISTORY

    A.    Administrative Complaint

Plaintiff filed an administrative tort claim against the BOP on or

---

[7]    Plaintiff appears to have mistakenly alleged that Dr. Marini did not perform any evaluation until October 13, 2005.  Complaint (Dkt. No. 1), Count I, § 14. Resolution of this potential discrepancy, however, is not necessary in order to address the issues raised in defendants' motion.

about August 7, 2006.[8]  Magnusson Decl. (Dkt. No. 18-4) Exhs. A-B.

Plaintiff administrative claim was denied on February 1, 2007.  *Id.*, Exh. B.

In denying that claim, BOP officials appear to have considered only the

events occurring after August 7, 2004, noting that the denial was based

upon the fact that Watts was "seen and treated repeatedly by Health

Services as well as outside medical providers[,]" and thus received

appropriate medical treatment for his condition.  *Id.*  Plaintiff

acknowledged his receipt of the claim denial on February 15, 2007.  *Id.,*

Exh. C.

> B.    This Action

Plaintiff commenced this action on July 27, 2007.  Complaint (Dkt.

No. 1).  Watts' complaint names the BOP; Dr. Dawn Marini, the Clinical

Director of Health Services at FCI Ray Brook;  PA Cink; and E. Sweatt,

another Physician's Assistant at FCI Ray Brook, as defendants and

asserts two claims, one claiming negligence under the FTCA and the

---

[8]        The photocopy of plaintiff's administrative tort claim included within the
record is partially obscured in the area near where the date is noted.  *See* Magnusson
Decl. (Dkt. No. 18-4) Exh. A.  Although there appears to be some confusion regarding
the precise date of the filing of the claim, with the plaintiff alleging in his complaint that
it occurred on August 17, 2006 , a close review of the photocopy appears to support
defendants' contention that it occurred on August 7, 2006.  *See* Plaintiff's Complaint,
(Dkt. No. 1), Count I, ¶ 18; Defendants' Statement of Material Facts (Dkt. No. 18-13) at
¶ 10; Magnusson Decl. (Dkt. No. 18-4) Exh. A.

second alleging a deliberate medical indifference *Bivens* cause of action.

In support of his FTCA claim, plaintiff avers that the "negligence of the

Bureau of Prisons and [the defendants'] failure to perform their duties"

resulted in damage to the "articular cartilage anatomy precluding any sort

of corrective soft tissue procedure; a Boutonniere deformity at his right

small finger; permanent loss of function to his right hand and small finger;

damage to cartilage, disfigurement; partial loss of earning capacity, past

and future medical costs and past and future pain and suffering."

Complaint (Dkt. No. 1), Count I, ¶ 17.  Plaintiff's *Bivens* claim centers

upon his contention that PA Cink, PA Sweatt and Dr. Marini were all

deliberately indifferent to his medical needs since they were aware of a

"clear and obvious risk of permanent harm to Plaintiff" but failed to take

corrective measures or appropriately and timely treat his medical

condition.  *Id.*, Count I, ¶¶ 3-14.  As relief, plaintiff seeks recovery of

$250,000 in damages.  *Id.*, Counts I and II.

　　　　In response to plaintiff's complaint the defendants have moved

seeking its dismissal or, in the alternative, for summary judgment in their

favor.[9]  Dkt. No. 18.  In their motion defendants argue that all or portions

---

　　　　[9]　　While defendants' motion was initially made only on behalf of defendants
BOP, Dr. Marini and PA Cink, defendant Sweatt has since joined in the motion

of plaintiff's FTCA and *Bivens* claims are untimely, and subject to dismissal, additionally maintaining that as a matter of law plaintiff cannot establish a violation of his rights under the Eighth Amendment. Defendants also assert entitlement to qualified immunity from suit, arguing that their actions were objectively reasonable, and further contend they cannot be held accountable for any damages suffered by the plaintiff during his surgery, which was performed by an independent contractor over whom they exercised no control.  *Id.*  Watts has since responded in opposition to the defendants' motion, seeking to avoid the effects of defendants' timeliness arguments by noting that he did not become aware of the cause of his injury until August 9, 2005 when he was given an opportunity to review the medical report of Dr. Marini disclosing the existence of a Boutonniere deformity in his right finger.  *See* Plaintiff's Memorandum (Dkt. No. 22) at p. 6.  In his responsive papers, plaintiff appears to argue for application of the diligent discovery rule, as well advocating for invocation of the doctrine of equitable tolling to salvage his otherwise potentially untimely claim.  *Id.* at pp. 10-11, 14-17.

Defendants' motion, which is now ripe for determination, has been

---

following her return of a waiver of service form.  *See* Dkt. Nos. 25, 27 and 28.

referred to me for the issue of a report and recommendation pursuant to

28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule

72.3(c).  *See also* FED. R. CIV. P. 72(b).

III.   DISCUSSION

    A.   Summary Judgment Motion Standard of Review[10]

    Summary judgment is governed by Rule 56 of the Federal Rules of

Civil Procedure.  Under that provision, summary judgment is warranted

when "the pleadings, the discovery and disclosure materials on file, and

any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct.

2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247,

106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old*

*Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is

"material", for purposes of this inquiry, if it "might affect the outcome of the

suit under the governing law."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at

2510; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir.

_____

      [10]   In light of the defendants' submission of extensive materials in
connection with their motion and the inherent difficulties in addressing the statute of
limitations defense on a motion to dismiss, I am recommending that defendants'
motion be considered as seeking the entry of summary judgment.

2005) (citing *Anderson*).  A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion.  *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

12

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party. *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

B.    Plaintiff's FTCA Claim[11]

---

[11]    For purposes of plaintiff's claim under the FTCA, the only proper defendant is the United States. *See Mignogna v. Sair Aviation, Inc.*, 937 F.2d 37, 40 (2d Cir. 1991); *Myers & Myers, Inc. v. United States Postal Serv.*, 527 F.2d 1252, 1256 (2d Cir. 1975); *Baez v. Parks*, No. 02 Civ. 5821, 2004 WL 1052779, at *6-7 (S.D.N.Y. May 11, 2004) (citation omitted). Accordingly, FTCA actions brought against federal agencies such as the BOP are subject to dismissal for lack of jurisdiction. *See Sereika v. Patel*, 411 F. Supp. 2d 397, 409 (S.D.N.Y. 2006) (citing *Rivera v. United States*, 928 F.2d 592, 609 (2d Cir. 1991)); *Paulino-Duarte v. United States*, No. 02 Civ. 9499, 2003 WL 22533401, at *1 (S.D.N.Y. Nov. 7, 2003). Similarly, FTCA claims brought against federal employees acting within the scope of their federal employment are also subject to dismissal for lack of subject matter jurisdiction. *See Baez*, 2004 WL 1052779, at *7 (citation omitted); *Paulino-Duarte*, 2003 WL 22533401, at *1-2. By contrast, the three individuals sued by Watts are properly named as defendants in connection with his *Bivens* claim. *See Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007).

While it could be argued that the plaintiff's failure to name the United States as a defendant with respect to his FTCA cause of action implicates subject matter jurisdiction, which can be invoked by the court *sua sponte*, since defendants have not

### 1.    The FTCA Generally

Absent a waiver from suit the United States, as a sovereign entity, is entitled to absolute immunity from suit, including for allegedly negligent acts on the part of employees of the government.  *United States v. Mitchell*, 445 U.S. 535, 538, 100 S. Ct. 1349, 1351-52 (1980).  The FTCA represents an express waiver of that sovereign immunity, permitting suits to be brought against the United States for the negligent acts or omissions of its employees.  *United States v. Kubrick,* 444 U.S. 111, 117, 100 S. Ct. 352, 357 (1979); *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 80 (2d Cir. 2005); *Guccione v. United States*, 847 F.2d 1031, 1033 (2d Cir. 1988), *cert. denied*, 493 U.S. 1020, 100 S. Ct. 719 (1990).  Because the FTCA represents only a limited waiver of sovereign immunity, its provisions are strictly construed and enforced by the courts.  *See, e.g., Koehler v. Cortland Memorial Hosp.*, 65 F. Supp. 2d 103, 105 (N.D.N.Y. 1999) (Munson, S.J.).

### 2.    Timeliness of Plaintiff's FTCA Claim

_____As a condition of the sovereign's waiver of immunity, Congress has

---

raised this issue I have chosen not to address it at this juncture.  *See Hughes v. Patrolmen's Benevolent Ass'n of City of New York, Inc.*, 850 F.2d 876, 881 (2d Cir. 1988) (citing, *inter alia*, Fed. R. Civ. P. 12(h)(3)).

established a two year time limit for presentment of tort claims to an

appropriate federal administrative agency.  28 U.S.C. § 2401(b).[12,13]  The

manifest purpose of this time limitation is "to encourage the prompt

presentation of claims."  *Kubrick*, 444 U.S. at 117, 100 S. Ct. at 357.

Noting that the FTCA "waives the immunity of the United States," the

Supreme Court has declined "to extend the waiver beyond that which

Congress intended."  *Id.* at 117-18, 100 S. Ct. at 357-58 (citations

omitted).

   Pivotal to analysis of defendants' limitation defense in this case is a

---

[12]    That section provides that

> [a] tort claim against the United States shall
> be forever barred unless it is presented in
> writing to the appropriate Federal agency
> within two years after such claim accrues or
> unless action is begun within six months after
> the date of mailing, by certified or registered
> mail, of notice of final denial of the claim by
> the agency to which it was presented.

28 U.S.C. § 2401(b); *see also Kubrick*, 444 U.S. at 117, 100 S. Ct. at 357.

[13]    The FTCA further provides that any action under it must be commenced
within six months notice of the agency's final denial of an administrative tort claim.
*Grancio v. DeVecchio*, __ F. Supp. 2d __, 2008 WL 2831898, at *6 (E.D.N.Y. July 24,
2008) (citing 28 U.S.C. § 2401(b)).  Since that denial occurred on February 1, 2007,
and this action was commenced within the prescribed time period following that
rejection, this portion of the FTCA's time limitations framework is not implicated.  *See
State Farm Mut. Auto. Ins. Co. v. United States*, 326 F. Supp. 2d 407, 417 (E.D.N.Y.
2004).

determination of when plaintiff's claim accrued.  "Ordinarily, a plaintiff's

FTCA claim accrues at the time of injury."  *Kronisch v. United States*, 150

F.3d 112, 121 (2d Cir. 1998) (citing *Barrett v. United States*, 689 F.2d 324,

327 (2d Cir. 1982)).  The time of accrual, however, may be deferred

pursuant to the "'diligence-discovery rule of accrual," under which it "'may

be postponed until the plaintiff has or with reasonable diligence should

have discovered the critical facts of both his injury and its cause.'"  *Id.*

Knowledge of the

> "critical facts" . . . requires only knowledge of, or the
> knowledge that could lead to, the basic facts of the
> injury, i.e., knowledge of the injury's existence and
> knowledge of its cause or of the person or entity that
> inflicted it . . . [A] plaintiff need not know each and
> every relevant fact of his injury or even that the injury
> implicated a cognizable legal claim.  Rather, a claim
> will accrue when the plaintiff knows or should know,
> enough of the critical facts of injury and causation to
> protect himself by seeking legal advice.

*Kronsch*, 150 F.3d at 121 (citing *Guccione v. United States*, 670 F. Supp.

527, 536 (S.D.N.Y. 1987 (citations omitted), *aff'd on other grounds*, 847

F.2d 1031 (2d Cir. 1988), *cert. denied*, 493 U.S. 1020, 100 S. Ct. 719

(1990)).

### a.   Events Occurring Before August 7, 2004

Defendants initially argue that by virtue of the governing two year

16

limitation period, plaintiff's FTCA claim is limited to negligence based upon conduct occurring on or after August 7, 2004 – the beginning of the two year period immediately predating his administrative claim.  Defendants' Memorandum (Dkt. No. 18-2) at pp. 13-14.  As defendants correctly note, under the plain language of the FTCA's statute of limitations the portion of plaintiff's claim based upon conduct occurring prior to August 7, 2004 is subject to dismissal, absent tolling or the finding of a basis to invoke the diligence-discovery rule.  *See, e.g., Grancio v. DeVecchio*, __ F. Supp. 2d. __, 2008 WL 2831898, at *6-9 (E.D.N.Y. July 24, 2008) (holding that a plaintiff's claims are time-barred if they did not accrue on or after two years prior to the filing of an administrative claim with the FBI); *Barbaro v. United States ex rel. Federal Bureau of Prisons FCI Otisville*, No. 05 CIV 6998, 2006 WL 2882975, at *2 (S.D.N.Y. Oct. 10, 2006) (same).

Before accepting defendants' argument regarding application of the FTCA's prescribed limitation period I must examine whether Watts is eligible for relief under the relaxed, diligent discovery rule.  In this instance, it appears that plaintiff knew of the critical facts supporting his negligence claim well before August 7, 2004.  While Watts argues that he was not aware of the cause of his injury until August 9, 2005, when he

received the report of Dr. Mina relating to his unrelated Boutonniere deformity of the right ring finger, it does not stand to reason that the plaintiff's discovery of the existence of a Boutonniere deformity of the right ring finger is in any way related to his knowledge concerning the facts of the injury pertaining to his right little finger.  Indeed, the plaintiff admits that he knew of the Boutonniere deformity diagnosis as of June 4, 2004 (and a previous Boutonniere deformity at least as late as February 18, 2004), and alleges pain and suffering both dating back to the date of the injury, and following June 4, 2004.

Although "[a] claim does not accrue when a person has a mere hunch, hint, suspicion, or rumor of a claim . . . such suspicions do give rise to a duty to inquire into the possible existence of a claim in the exercise of due diligence." *Kronisch*, 150 F.3d at 121 (citations omitted). In light of all the plaintiff's awareness of his finger injury and complaint that the failure of the defendants to treat his injury caused the deformity and precluded a proper repair of his finger, it appears that plaintiff had sufficient awareness of the critical facts of his injury and its cause, or at a minimum knew of the injury and had the duty to investigate its origin, prior to August 7, 2004.  *See Kubrick*, 444 U.S at 123, 100 S. Ct. at 360 (noting

18

that "[w]e thus cannot hold that Congress intended that 'accrual' of a claim must await awareness by the plaintiff that his injury was negligently inflicted. A plaintiff . . . armed with the facts about the harm done to him, can protect himself by seeking advice in the medical and legal community. To excuse him from promptly doing so . . . would undermine the purpose of the limitations statute . . . ."); *see also Kronisch*, 150 F.3d at 121-23.

In addition to urging application of the diligent discovery rule, plaintiff requests that the time period between February 3, 2004 and June 2, 2004 be excluded from the limitations calculus on the basis of equitable tolling, based upon the existence of "extenuating circumstances . . . [and] that technical compliance be excused in the interest of justice."[14] Plaintiff's Opposition (Dkt. No. 22) at p. 10.  Equitable tolling is a doctrine applied in "'rare and exceptional circumstances," where a court finds that "extraordinary circumstances" prevented a party from timely performing a required act and that party "acted with reasonable diligence throughout the period he [sought] to toll." *Doe v. Menefee*, 391 F.3d 147, 159-60 (2d Cir. 2004). The doctrine may be applied where a statute of limitations has

---

[14]     Presumably, plaintiff intends to seek exclusion of the time period between February 3, 2004 and August 7, 2004, the two year cut-off point for purposes of the FTCA's statute of limitations.

passed due to the filing of a "defective pleading" or a defendant's "misconduct" in preventing the plaintiff from bringing his or her claim or learning of the cause of action.  *Irwin v. Dep't of Veterans Affairs*, 489 U.S. 89, 96, 111 S. Ct. 453, 457-58 (1990); *Kronisch*, 150 F.3d at 123.

A review of the record now before the court fails to disclose any extraordinary circumstances which would justify the application of the equitable tolling doctrine.  Plaintiff has not filed a defective pleading in this suit which caused him to miss the governing statute of limitations, nor has he alleged that the defendants in some way conspired to deprive him of the facts which comprise his claim.  Rather, any delay in pursuing his FTCA claims appears to be fairly attributed to plaintiff's own inaction.

Because I find that plaintiff knew or reasonably should have known of his injury prior to August 7, 2004, and that the doctrine of equitable tolling is not appropriately invoked in this instance, I recommend a finding that plaintiff may not recover under the FTCA for any of the alleged negligent acts of the defendants occurring before August 7, 2004.

b.    Events Occurring After August 7, 2004

With respect to the events occurring within the two year window created under the FTCA, defendants argue any claims arising out of them

are also precluded in light of the fact that they are not sufficiently distinct from the alleged negligent acts suffered prior to August 7, 2004.

A plaintiff asserting negligence on the part of a governmental employee may not recover for alleged acts of negligence which, while occurring within the two year FTCA time window, are not sufficiently distinct from negligent conduct allegedly occurring prior to the two year barrier. *Barbaro v. United States ex rel. Federal Bureau of Prisons FCI Otisville*, 521 F. Supp. 2d 276, 278-80 (S.D.N.Y. 2007).  Although arising in the context of a claim asserted under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*, the principle now at play was addressed by the Second Circuit in *Mix v. Delaware & Hudson Railway Co.*, 345 F.3d 82 (2d Cir. 2003).  In *Mix*, that court noted that although a plaintiff's claim for negligence occurring outside of the relevant limitation period may be time-barred, that "plaintiff can recover for injuries suffered during the [governing limitation] period preceding the suit, if [his or her] injuries are sufficiently distinct from those previously suffered" adding that "[a] plaintiff can also recover for aggravation to existing injuries, provided that the aggravation was caused by a distinct act of negligence whose existence and relationship to the injury was unknown prior to the

21

[governing limitation] period preceding the suit." *Mix*, 345 F.3d at 90.

Although *Mix* was addressed to a limitation period imposed under the FELA, in a series of subsequent decisions District Judge Denise Cote, of the Southern District of New York, has analogized the FTCA to the FELA, given "the overlap in the . . . accrual rules under the FTCA and FELA", noting that for accrual purposes there is a need for distinct act of negligence, thus rejecting the continuous violation doctrine for the purposes of FTCA claims. *Barbaro,* 521 F. Supp. 2d at 278-80; *see also Barbaro v. United States ex rel. Federal Bureau of Prisons FCI Otisville*, No. 05 Civ. 6998, 2008 WL 474135, at *2 (S.D.N.Y. Feb 21, 2008) (citing *Mix*).

In light of *Mix* and its progeny, if plaintiff's fifth finger condition is properly regarded as having been only temporary in nature prior to August 7, 2004, later ripening into a permanent condition, then he could potentially avoid application of the FTCA statute of limitations and maintain a tort claim against the government based upon negligent acts occurring within that two year window. *Mix,* 345 F.3d at 90-91; *see also Campbell v. Consolidated Rail Corp.*, No. 5:05-CV-1501, 2008 WL 3414029, at *5-6 (N.D.N.Y. Aug. 8, 2008) (Mordue, C.J.); *Bababekov v.*

*Long Island R.R. Co.*, No. 03-CV-3477, 2006 WL 229914, at *5-6 (E.D.N.Y. Jan. 31, 2006).  Plaintiff has stated his belief, however, that it was "too late as of June 2, 2004" to repair his right little finger.  Plaintiff's Opposition (DKt. No. 22) at p. 13.  Moreover, a review of the report of Dr. Adam Shafritz, dated October 3, 2005, confirms the static nature of plaintiff's condition and the consultant's belief that it was immaterial when plaintiff chose to undergo the elective arthrodesis procedure.  Plaintiff's Medical Records at pp. 115-16.  Under these circumstances, no reasonable factfinder could conclude that plaintiff's right fifth finger condition was only temporary in nature prior to August 7, 2004, but later became permanent.

Any claim of negligence under the FTCA based upon alleged acts of negligence occurring during the course of plaintiff's surgery, including the serious burns allegedly experienced, stand on different footing for purposes of the limitation period inquiry.  A reasonable factfinder could conclude that the burns allegedly suffered during the course of plaintiff's surgery, which occurred after August 7, 2004, are sufficiently distinct from the underlying finger injury as to constitute a separate act of negligence not barred by the governing two year statute of limitations.  *See Mix*, 345

F.3d at 91.

Based upon the foregoing, I recommend a finding that with the exception of plaintiff's claims surrounding his surgery, the balance of plaintiff's FTCA cause of action be dismissed as untimely based upon the governing statute of limitations.[15]

### 3.    Merits of Plaintiff's FTCA Claim

In addition to challenging the timeliness of this action, defendants also argue that plaintiff's FTCA claim is substantively deficient since Watts "cannot prove that the allegedly negligent delay in his treatment substantially caused him harm."  Defendant's Motion (Dkt. No. 18-2)at pp. 17-18.

The FTCA does not substantively address the contours of negligence actionable under its provisions, nor does federal common law provide guidance in this regard; instead, the FTCA looks to state law to inform the negligence analysis.  *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994).  Liability attaches to the "' . . . United States, if a private person, would be liable to the claimant in accordance with the law of the

---

[15]    As will be seen, plaintiff's claim of negligence under the FTCA regarding the surgery is nonetheless subject to dismissal on the merits, in light of the fact that the surgery was performed by a separate consultant engaged by the government, rather than a governmental agency or employee. *See* pp. 26-29, *post.*

place where the act or omission occurred.'" *Id.* (quoting 28 U.S.C. § 1346(b)(1)).

Under New York law, to support a claim of medical malpractice against a licensed physician a plaintiff must demonstrate both a deviation or departure from accepted standards of practice and that the deviation or departure was the proximate cause of an injury to the plaintiff. *Holbrook v. United Hosp. Med. Ctr.*, 248 A.D.2d 358, 358, 669 N.Y.S.2d 631, 632 (2d Dep't 1998); *Amsler v. Verrilli*, 119 A.D.2d 786, 786-87, 501 N.Y.S.2d 411, 412 (2d Dep't 1986).  The controlling standard of care is objective, based on what a reasonably prudent physician would have done under the circumstances. *Nestorowich v. Ricotta*, 97 N.Y.2d 393, 398, 740 N.Y.S.2d 668, 671-72 (2002).  When, based upon a review of the record before it, a court concludes that no reasonable factfinder could determine that both of these elements can be established, the entry of summary judgment in favor of the defending physician is appropriate. *Holbrook*, 248 A.D.2d at 358, 669 N.Y.S.2d at 632; *Amsler*, 119 A.D.2d at 787, 501 N.Y.S.2d at 412.

Plaintiff's claim of negligence appears to be directed toward the delay of prison officials at FCI Ray Brook to address his finger injury. Under New York Law, such a claim of negligent delay in treatment can

25

support a claim for medical malpractice. *See, e.g., Hanley v. St. Charles Hosp. & Rehabilitation Ctr.*, 307 A.D.2d 274, 277, 763 N.Y.S.2d 322, 324 (2d Dep't 2003); *Jump v. Facelle*, 275 A.D.2d 345, 345-46, 712 N.Y.S.2d 162, 163 (2d Dep't 2000).  Notably, however, questions of delay in treatment often give rise to issues that are well-suited for a jury's determination as to whether or not the delay was reasonable or caused the harm complained of by the plaintiff.  *See Hanley*, 307 A.D.2d at 277, 763 N.Y.S.2d at 324;  *Evans v. Holleran*, 198 A.D.2d 472, 473-74, 604 N.Y.S.2d 958, 960 (2d Dep't 1993).

In this case, faced with defendants' summary judgment motion, plaintiff has failed to adduce or point to any evidence already in the record to suggest that the delay in affording him treatment, explained by Dr. Marini as based upon financial constraints as well as the elective nature of the proposed surgery, failed to meet community standards.  In light of this lack of evidence from which a reasonable factfinder could conclude that the delay in treating his finger condition either caused the Boutonniere deformity or required a more invasive surgical procedure with less likelihood of success, I conclude that plaintiff's claim that the delay in providing treatment was negligent is subject to dismissal.

Plaintiff has also alleged negligence as a result of the burns experienced during the course of his surgery and resulting deformity.  The record firmly establishes – and plaintiff did not address this argument in his responsive papers – that the persons involved in plaintiff's surgery, including Dr. Adam B. Shafritz, were employees or affiliates of the Fletcher Allan Health Care Center, and were independent contractors rather than government employees.

By its express terms, the FTCA provides that "the term 'Federal agency' includes the executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, but does not include any contractor with the United States."  28 U.S.C. § 2671.  Accordingly, the FTCA in general precludes suits against the United States based upon the wrongdoing of independent contractors.  *Roditis v. United States*, 122 F.3d 108, 111 (2d Cir. 1997).  Where, however, the government "'enjoys the power to control the detailed physical performance of the contractor . . . *or* if the Government in fact supervises the day-to-day operations' of the contractor,'" the entity maybe a government employee against whom suit

27

may be brought under the FTCA.  *Gibbons v. Fronton*, 533 F. Supp. 2d

449, 453 (S.D.N.Y. 2008) (citing and quoting *B & A Marine Co. v. Am.*

*Foreign Shipping Co.,* 23 F.3d 709, 713 (2d Cir. 1994)) (emphasis in

original).

When a private entity contracts with the federal government to

provide medical care for the federal entity, that party generally retains its

status as an independent contractor due to the lack of physical control or

oversight of the day-to-day operations of the medical care provider. *See*

*Leone v. United States*, 910 F.2d 46, 47, 50-51 (2d Cir. 1990) (finding that

private physicians designated by the Federal Aviation Administration were

not employees of the government under the FTCA); *Gibbons*, 533 F.

Supp. 2d at 451, 453-54 (finding that the employees of a hospital

contracted by the Department of Veterans Affairs were not employees of

the federal government).  There is nothing contained in the record now

before the court to warrant rejection of the presumption of independence

in this instance.

Because plaintiff has neither named any member of the Fletcher

Allen Health Care medical center staff as a defendant nor provided any

evidence to reflect that those involved in his treatment at that facility were

28

either employees of the federal government or under its active control, he is barred as a matter of law from recovering damages under the FTCA based upon actions which occurred during the course of his surgery. Accordingly, in addition to being time-barred in large part, plaintiff's FTCA claims are lacking in merit.

  C. Plaintiff's *Bivens* Claim

_____Plaintiff's second claim is properly brought under *Bivens*, since the named defendants alleged to have subjected him to cruel and unusual punishment, in violation of the Eighth Amendment, are federal employees not subject to liability under 42 U.S.C. § 1983. *See, e.g., Baez v. Parks*, No. 02 Civ. 5821, 2004 WL 1052779, at *1 n.1 (S.D.N.Y. May 11, 2004). In his *Bivens* claim, plaintiff argues that while he was at FCI Ray Brook, defendants Marini, Cink, Sweatt were all deliberately indifferent to his medical needs stemming from the injury to his right little finger. Plaintiff's Complaint (Dkt. No. 1), Count II, at ¶¶ 1-16.

  1. Timeliness of Plaintiff's *Bivens* Claim

_____In their motion, defendants also first challenge the timeliness of plaintiff's *Bivens* claim. In essence, defendants contend that because the plaintiff knew of his Boutonniere deformity on June 2, 2004, and thus well

longer than three years prior to the filing of his complaint on July 27, 2007,
plaintiff's *Bivens* claim is time-barred in its entirety.  In response, plaintiff
argues that his claim is not time barred since he did not learn of the
"probable cause" of his injury until August of 2005.

In New York, *Bivens* claims are subject to a three year statute of
limitations.  *Head-Bey v. Smith,* No. 9:04-CV-191, 2007 WL 274793, at *4
(N.D.N.Y. Jan. 26, 2007) (Kahn, D.J.); *see also Ish Yerushalayim v.
United States*, 374 F.3d 89, 91 (2d Cir. 2004) (citing *Tapia-Ortiz v. Doe*,
171 F.3d 150, 151 (2d Cir. 1999)).  In general, a plaintiff's *Bivens* claim
accrues when he or she "'knows or has reason to know of the harm.'"
*Head-Bey*, 2007 WL 274793, at *4 (citing *Eagleston v. Guido*, 41 F.3d
865, 871 (2d Cir. 1994)).  "'The critical time for accrual purposes is when a
plaintiff is aware that he or she is suffering a wrong for which damages
may be recovered in a civil rights action."  *Id.* (citing *Singleton v. City of
New York*, 632 F.2d 185, 192 (2d Cir. 1980)).

Questions remain in this circuit about whether or not the continuing
violation doctrine is applicable to *Bivens* claims.  Under the continuing
violation rule, "in certain tort cases involving continuous or repeated
injuries, the statute of limitations accrues upon the date of the last injury

and the plaintiff may recover for the entire period [of the other party's]

negligence, provided that an act contributing to the claim occurs within the

filing period." *Mix,* 345 F.3d at 88.

As of this date, there does not appear to be any controlling case law

in this district clearly stating whether that the continuing violation doctrine

is inapplicable to *Bivens* claims.  The most relevant pronouncements on

the matter from any district court within this circuit are found in the

*Barbaro v. U.S. ex rel. Federal Bureau of Prisons* line of cases from the

Southern District of New York.  In *Barbaro,* addressing similar claims

based upon an alleged refusal of BOP officials to provide medical

treatment to a prison inmate, the district court specifically noted that the

Second Circuit had not addressed whether the continuing violation

doctrine can properly be applied to *Bivens* claims.  *Barbaro*, 521 F. Supp.

2d at 281.  The court went on to note, however, that

> [i]t is unnecessary to decide in this case, however,
> whether the continuing violation doctrine might
> ever apply to a *Bivens* action, since it does not
> apply to this *Bivens* claim, in which a constitutional
> claim is triggered by each refusal to provide care in
> response to a specific request for care.

*Id.*  In that case the district court thus found it unnecessary under the

circumstances presented to invoke the continuing violation doctrine,

31

concluding that in any event a separate indifference cause of action under *Bivens* was triggered by each separate refusal to provide treatment.[16]  *Id.* at 284.

Plaintiff's complaint in this action was filed on July 27, 2007. Accordingly, any claim which accrued prior to July 27, 2004, including based upon alleged inactions dating back to June 2, 2004, are time barred.  It does not follow, however, as defendants now argue, that the entirety of plaintiff's *Bivens* cause of action is precluded by the governing statute of limitations.  Finding the reasoning of *Barbaro* to be persuasive, I conclude that plaintiff is entitled to recover based upon any deliberate indifference, including denial of treatment, occurring after that date, and that a reasonable factfinder could determine that defendants' denial or delay in treatment extended beyond that date.  Accordingly, I recommend against dismissal of plaintiff's *Bivens* cause of action based upon the governing statute of limitations.[17]  Moreover, the Dr. Mina report

---

[16]      Upon Barbaro's motion for an immediate appeal, the court noted that the "2007 [*Barbaro*] Opinion decided in the affirmative . . . [the question of] whether the continuing violation doctrine is inapplicable to a *Bivens* claim alleging deliberate indifference to the plaintiff's medical needs, in violation of the Eighth Amendment." *Barbaro v. United States ex rel. Federal Bureau of Prisons FCI Otisville,* No. 05 Civ. 6998, 2008 WL 474135, at *1 (S.D.N.Y. Feb. 21, 2008).

[17]      To the extent that plaintiff attempts to reach back to events predating July 27, 2004, his argument is flawed.  Plaintiff bases that argument upon his

has no bearing on the causation of the injury at issue, instead addressing an unrelated Boutonniere deformity in plaintiff's right ring finger, and noting that the deformity was "not a typical" one.  *See* Plaintiff's Medical Records at p. 119.

### 2.    Merits of Plaintiff's *Bivens* Claim

Plaintiff's *Bivens* claim alleges deliberate indifference on the part of PA Cink, PA Sweatt, and Dr. Marini.  Plaintiff's deliberate indifference claim is subject to analysis under well-developed body of Eighth Amendment medical indifference jurisprudence.

The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble,* 429 U.S. 97, 102, 104, 97 S. Ct. 285, 290, 291 (1976); *see also Whitley v. Albers,* 475 U.S. 312, 319, 106 S. Ct. 1076, 1084 (1986) (citing, *inter alia*, *Estelle*).  While the Eighth Amendment does not

---

contention that he did not know the "probable cause" of the injury until after reading Dr. Mina's report, and thus his claim in its entirety did not accrue until August of 2005.  A *Bivens* claims accrues when the plaintiff either has knowledge or reason to know of harm.  *Head-Bey,* 2007 WL 274793, at *4.  The plaintiff has neither cited, nor is the court able to locate, any case which provides that knowledge of the probable cause of injury is a prerequisite for accrual of a *Bivens* claim.

mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement; thus the conditions of an inmate's confinement are subject to Eighth Amendment scrutiny.  *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S. Ct. 2392, 2400 (1981)).

A claim alleging that prison conditions violate the Eighth Amendment must satisfy both an objective and subjective requirement – the conditions must be "sufficiently serious" from an objective point of view, and the plaintiff must demonstrate that prison officials acted subjectively with "deliberate indifference."  *See Leach v. Dufrain,* 103 F. Supp. 2d 542, 546 (N.D.N.Y. 2000) (Kahn, J.) (citing *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321 (1991)); *Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.); *see also, generally, Wilson*, 501 U.S. 294, 111 S. Ct. 2321.  Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1978; *Leach*, 103 F. Supp. 2d at 546 (citing *Farmer*); *Waldo*, 1998

WL 713809, at *2 (same).

In order to state a medical indifference claim under the Eighth Amendment, a plaintiff must allege a deprivation involving a medical need which is, in objective terms, "'sufficiently serious'". *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (citing *Wilson*, 501 U.S. at 298, 111 S. Ct. at 2324), *cert. denied sub nom.*, *Foote v. Hathaway*, 513 U.S. 1154, 115 S. Ct. 1108 (1995). A medical need is serious for constitutional purposes if it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain'." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (citations omitted). A serious medical need can also exist where "'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain'"; since medical conditions vary in severity, a decision to leave a condition untreated may or may not be unconstitutional, depending on the facts*. Harrison v. Barkley*, 219 F.3d 132, 136-37 (2d Cir. 2000) (quoting, *inter alia*, *Chance*). Relevant factors informing this determination include whether the plaintiff suffers from an injury that a "'reasonable doctor or patient would find important and worthy of comment or treatment'", a condition that "'significantly affects'" a prisoner's daily activities, or causes "'chronic and substantial pain.'"

35

*Chance*, 43 F.3d at 701 (citation omitted); *LaFave v. Clinton County*, No. CIV. 9:00CV774, 2002 WL 31309244, at *2-*3 (N.D.N.Y. Apr. 3, 2002) (Sharpe, M.J.).

Deliberate indifference, in a constitutional sense, exists if an official knows of and disregards an excessive risk to inmate health or safety; the official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979; *Leach*, 103 F. Supp. 2d at 546 (citing *Farmer*); *Waldo*, 1998 WL 713809, at *2 (same).

It is well-established that mere disagreement with a prescribed course of treatment, or even a claim that negligence or medical malpractice has occurred, does not provide a basis to find a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105-06, 97 S. Ct. at 201-02; *Chance*, 143 F.3d at 703; *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir.), *cert. denied*, 506 U.S. 1040, 113 S. Ct. 828 (1992). The question of what diagnostic techniques and treatments should be administered to an inmate is a "classic example of a matter for medical judgment"; accordingly, prison medical personnel are vested with

broad discretion to determine what method of care and treatment to provide to their patients. *Estelle*, 429 U.S. at 107, 97 S. Ct. at 293; *Chance*, 143 F.3d at 703; *Rosales v. Coughlin*, 10 F. Supp. 2d 261, 264 (W.D.N.Y. 1998).

a.   <u>Objective Element</u>

Although defendants' challenge of the sufficiency of plaintiff's *Bivens* claim focuses upon the subjective indifference element, I note that there is considerable room for disagreement as to whether plaintiff's Boutonniere deformity satisfies the objective prong of the deliberate indifference analysis. In the two cases the court has uncovered addressing Boutonniere deformities, neither was held to constitute a "sufficiently serious" condition for Eighth Amendment purposes.

In *Hernandez v. Duc*, the plaintiff's Boutonniere deformity was held not to be a sufficiently serious condition to support an indifference claim due to the fact that "plaintiff's pain was intermittent and moderate." No. CIV S-06-1521, 2007 WL 4218949, at *5-6, 9 (E.D. Cal. Nov. 28, 2007). Similarly, in *Paterson v. Goord*, a case arising out of this district, it was held that a Boutonniere deformity did not constitute a sufficiently serious condition. No. 9:06-CV-0211, 2008 WL 623123, at *4, 8-9 (N.D.N.Y. Mar.

37

4, 2008) (Mordue, C. J.).  Although in *Paterson,* the plaintiff's subjective complaints were somewhat discounted, it was noted that "each of the four New York State district courts in this Circuit have specifically held, as a matter of law, that a *broken* finger alone does not constitute a serious medical need." *Id.* at *8 (citations omitted).  In that case, although the plaintiff alleged that "'there was a chance'" of permanent injury to his finger, it is not clear that plaintiff suffered such injury.  *Id.* at *9.

Given the procedural posture of this case I have chosen not to rely upon *Paterson* and *Hernandez,* and recommend against concluding that plaintiff's finger condition was not sufficiently serious to invoke Eighth Amendment protections, determining that a reasonable factfinder could conclude otherwise.  In this instance plaintiff underwent corrective surgery on his finger, allegedly after months of enduring pain and swelling in his finger.  During that surgery, it was noted that "prior to the osteotomy, the articular cartilage anatomy was extraordinarily diseased and any sort of corrective soft tissue procedure would likely have failed."  Plaintiff's Medical Records at p. 127.  Given the length of time between the injury (January 31, 2004) and surgery (January 26, 2006), plaintiff's apparent complaints of constant pain, and loss of range of motion in his as a result

of the surgery, I find that this case is materially distinguishable from both *Hernandez* and *Paterson*.  *See Ross v. Coombe*, No. 94-CV-6497, 1996 WL 637756, at *2 (W.D.N.Y. Oct. 30, 1996) (citing cases noting that long delays in scheduling elective surgery may constitute deliberate indifference); *see West v. Keve*, 541 F.Supp. 534, 540 (D. Del.1982) (finding that seventeen-month delay between recommendation and performance of elective surgery constituted deliberate indifference), *appeal dismissed*, 721 F.2d 91 (3d Cir.1983)).

### b.    Subjective Element

Based upon his allegations, taken as true, plaintiff has also satisfied the subjective element of the deliberate indifference analysis.  Plaintiff has alleged that PA Cink, PA Sweatt, and Dr. Marini all personally saw the plaintiff in connection with his injury, knew of its severity, yet failed to provide adequate care or to accelerate the timetable for plaintiff's surgery, resulting in permanent damage to his finger.  On this basis I conclude that a reasonable factfinder could determine that the three named individual defendants were subjectively indifferent to plaintiff's serious medical needs.

### D.    Qualified Immunity

In addition to challenging both the timeliness and merits of plaintiff's claims, defendants also assert entitlement to qualified immunity. Qualified immunity shields government officials performing discretionary functions from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982) (citations omitted). Accordingly, governmental officials sued for damages "are entitled to qualified immunity if 1) their actions did not violate clearly established law, or 2) it was objectively reasonable for them to believe that their actions did not violate such law." *Warren v. Keane,* 196 F.3d 330, 332 (2d Cir. 1999) (citing *Salim v. Proulx,* 93 F.3d 86, 89 (2d Cir. 1996)); *see also Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007); *Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007). The law of qualified immunity seeks to strike a balance between overexposure by government officials to suits for violations based upon abstract rights and an unduly narrow view which would insulate them from liability in connection with virtually all discretionary decisions. *Locurto v. Safir*, 264 F.3d 154, 162-63 (2d Cir. 2001); *Warren*, 196 F.3d at 332. As the Second Circuit has observed,

> [q]ualified immunity serves important interests in
> our political system, chief among them to ensure
> that damages suits do not unduly inhibit officials in
> the discharge of their duties by saddling individual
> officers with personal monetary liability and
> harassing litigation.

*Provost v. City of Newburgh*, 262 F.3d 146, 160 (2d Cir. 2001) (internal

quotations omitted) (citing, *inter alia*, *Bivens v. Six Unknown Named*

*Agents of the Fed. Bureau of Narcotics*, 456 F.2d 1339, 1348 (2d Cir.

1972)).

Qualified immunity analysis involves a three step inquiry.  *Harhay v.*

*Town of Ellington Bd. of Educ.,* 323 F.3d 206, 211 (2d Cir. 2003).  As a

threshold matter it must first be determined whether, based upon the facts

alleged, plaintiff has facially established a constitutional violation.  *Id.*;

*Gilles v. Repicky*, 511 F.3d 239, 243-44 (2d Cir. 2007).  If the answer to

this inquiry is in the affirmative, the court must then turn its focus to

whether the right in issue was clearly established at the time of the alleged

violation.  *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201-02, 121 S. Ct.

2151, 2156 (2001)); *see also Poe v. Leonard*, 282 F.3d 123, 132-33 (2d

Cir. 2002).  Finally, if the plaintiff had a clearly established, constitutionally

protected right that was violated, he or she must demonstrate that it was

not objectively reasonable for the defendant to believe that his action did

not violate such law.  *Harhay*, 323 F.3d at 211; *Poe*, 282 F.3d at 133

(quoting *Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir. 1998) (quoting,

in turn, *Salim*, 93 F.3d at 89)).

In this instance I conclude that each of the three named defendants

is entitled to qualified immunity.[18]  The record firmly establishes that the

delay in arrangement for an orthopedic consultant, and ultimately for

surgery, of plaintiff's little finger condition was based upon logistical

constraints and the need to prioritize the provision of outside medical

services for inmates housed at FCI Ray Brook.  The record fails to

disclose any evidence from which any of the three named defendants

would conclude that the delay resulted in the worsening or deterioration of

plaintiff's condition or extreme pain.  Indeed, plaintiff's medical records fail

to support any contention on his part that he made repeated requests for

attention to his finger, or even for medication to address the pain which,

he claims to have endured.  Under these circumstances, I conclude that it

was objectively reasonable for the defendants to delay in providing

treatment, and thus recommend dismissal of plaintiff's claims against

---

[18]     The BOP is not a proper defendant in connection with plaintiff's Eighth
Amendment claim under *Bivens*.  *See Lucas v. United States Bureau of Prisons*, No.
9:03-CV-1296, 2008 WL 150442, at *5 (N.D.N.Y. Jan. 14, 2008) (Scullin, S.J. and
Homer, M.J.).

them based upon qualified immunity.[19]

IV.    SUMMARY AND RECOMMENDATION

Plaintiff's complaint in this action asserts claims based upon conduct partially predating, but which in part occurred after, commencement of the respective limitation period applicable to his two causes of action. Plaintiff's FTCA claims, which are subject to a statute of limitations which is strictly construed, are untimely even with respect to conduct occurring after the commencement of the two year limitation period, since the injuries alleged by the plaintiff to have been suffered, leaving aside the burns experienced during the course of his surgery, are not sufficiently distinct from the conduct which occurred prior to commencement of the limitation period.  With respect to plaintiff's claims surrounding the burns experienced while undergoing surgery, those claims are legally deficient in light of the fact that they are based upon the conduct of independent contractors not controlled by the government.  Turning to plaintiff's medical indifference claims under *Bivens*, I find that while the claims are

---

[19]    A portion of plaintiff's *Bivens* claim is predicated upon the burns which he suffered while undergoing surgery for his finger condition.  Since that claim involves one of malpractice not cognizable under the Eighth Amendment, *see Estelle*, 429 U.S. at 105-06, 97 S. Ct. at 201-02; *Chance*, 143 F.3d at 703, and in any event does not involve actions of any of the three named defendants, this portion of plaintiff's *Bivens* claim is also lacking in merit.

not barred by the statute of limitations since each denial or delay in providing treatment conceptually represented a separate alleged act of indifference, nor are the claims legally deficient as a matter of law, defendants are nonetheless entitled to qualified immunity from suit with regard to those claims in light of my finding that their actions in delaying plaintiff's surgery were not objectively unreasonable.  Based upon the foregoing, it is hereby respectfully

RECOMMENDED that defendants' motion (Dkt. No. 18), which the court has treated as seeking the entry of summary judgment, be GRANTED, and that plaintiff's complaint in this action be DISMISSED in its entirety.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within TEN days.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1);  FED. R. CIV. P.  6(a), 6(e), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this

Report and Recommendation upon the parties in accordance with this

court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:      September 30, 2008
            Syracuse, NY